**CARR v. NATIONAL BANK OF IONIA et al.**

- No. 2676.

District Court, W. D. Michigan, S. D.
May 21, 1934.

Brake & Davis, of Stanton, Mich., for plaintiff.

Glenn D. Mathews, of Ionia, Mich., for defendants.

RAYMOND, District Judge.

The bill of complaint prays for an accounting respecting indebtedness of the Bank of Hubbardston to the National Bank of Ionia, and that defendants be required to release and deliver to plaintiff certain securities deposited with defendants as collateral, which it is alleged defendants are no longer entitled to hold. The total face value of the collateral in question is somewhat less than $12,000. It consists of certain "safe keeping receipts" for bonds, a certificate for shares of the capital stock of the American Home Security Bank, a certificate of deposit of stock of the Luce Furniture Shops of Grand Rapids, and four real estate mortgages.

It appears that in the year 1931 the Bank of Hubbardston (then a private bank wholly owned by Harry J. Holbrook, C. Raymond Cowman, and Ira Cummings) was indebted to the National Bank of Ionia in the sum of $8,000, and that this indebtedness was secured by collateral which was changed from time to time by substitutions. The controversy arises from the fact that in the early part of 1932 Mr. Robertson, vice president of the National Bank of Ionia, informed Mr. Holbrook, manager of the Bank of Hubbardston, that bank examiners had complained of the indebtedness of the Bank of Hubbardston, and, as a result, on February 9, 1932, there were delivered to the national bank three promissory notes executed by the copartners, as follows: Note of Holbrook, indorsed by Cummings, in the sum of $3,000; note of Cummings, indorsed by Holbrook, in the sum of $3,000; and note of Cowman, indorsed by both Holbrook and Cummings, for $2,000. Upon receipt of these notes, the two notes given by the Bank of Hubbardston for $3.000 and $5,000, respective-

ly, were surrendered. These were in the form known as collateral notes, while the notes of the individuals were without agreement as to collateral. Upon the surrender of the two notes, they were stamped "Paid by renewal." So far as disclosed by the record, no request was made by Mr. Holbrook for return of the collateral and no demand therefor was thereafter made prior to receivership. A later examination of the national bank resulted in demand by the examiner for more collateral. This was communicated to Mr. Holbrook by letter dated July 19, 1932, which reads:

"July 19, 1932

"Harry J. Holbrook,
"Hubbardston, Michigan.

"Dear Mr. Holbrook:—I have received the stock of the American Home Security Bank, as well as a receipt for you to sign, so we can complete that transaction the first time you are in town.

"Examiner Regan completed his examination yesterday with a Board of Directors meeting at the same time and he rode us very hard on different items that have been in the bank for a long time. I thought switching your Bank of Hubbardston notes to personal notes would enable us to get by the matter successfully but the examiner doubted the wisdom of such a move and requested that we secure more collateral.

"I haven't checked up your collateral lately but we are short quite an amount. If you could arrange to deposit a few real estate mortgages with us it would save me from an embarrassing position.

"Yours truly,
"The National Bank of Ionia
"By ————
"AR:T        Vice Pres. & Cashier."

On July 25th Robertson again wrote Holbrook as follows:

"July 25, 1932

"Mr. Harry Holbrook
"Hubbardston, Mich.

"Dear Harry: We have checked over your collateral and find we have the Mary Feehan mortgage of $1,600.00 and the Mathew Marion mortgage of $1,000.00, then we. have three bonds on which we were unable to get satisfactory quotations.

"I presume your American Home Security Bank stock could be sold in the neighborhood of $500.00.

"I think if you had a couple of mortgages aggregating $5,000.00, it would make

the collateral ample to pass the Examiner's requirements.

"Yours truly,
"The National Bank of Ionia
"By ————
"AR:J        Vice President & Cashier."

In response to these demands, two mortgages were deposited with the national bank on August 17, 1932, as follows: One of $2,000 given by Walter Grace and one of $3,000 given by John M. Burns.

The notes of the partners were renewed from time to time and are still held by the national bank, and interest has been paid thereon. It appears that upon the giving of the notes the Hubbardston Bank issued a certificate of deposit to Mr. Holbrook in the sum of $3,000, that Cummings took a certificate of deposit of $1,500, and received discharge of an obligation which he owed the bank in the amount of $1,500, and that Cowman received cancellation of a note of $2,000. Plaintiff claims that, while interest on the notes has at times been paid by draft of the Bank of Hubbardston, it has, in fact, come ultimately from the individual partners.

The important questions are whether the Bank of Hubbardston is indebted to the National Bank of Ionia and whether the receiver of the National Bank of Ionia is entitled to hold the several items of collateral as pledge therefor. The decision turns upon the legal effect of the transactions of February 9, 1932, and upon whether the indebtedness of the copartners doing business as the Bank of Hubbardston was extinguished by the delivery of the promissory notes of the individuals on that day. Plaintiff urges that no liability of the Bank of Hubbardston survived these transactions, for the reasons that it did not sign or indorse the notes; that the national bank gave up its written evidence of indebtedness; that upon its records it carried forward the liabilities of the individuals and not that of the bank; and that the respective interests of the partners in the bank were not in the same proportion as the liability assumed by their notes. It is contended that the acts and conduct of the national bank on February 9th indicate an intention to accept the liability of Holbrook, Cummings, and Cowman solely as individuals and in the amounts of the obligations that day assumed in the place and stead of their liability as copartners in the Bank of Hubbardston. .

The element of intent characterizes the substance of the transaction. Oftentimes intent may be determined by clear understanding of the purpose to be accomplished. When it is considered that the transactions of February 9, 1932, resulted from the insistence by the bank examiner that the loan was unsatisfactory, it is difficult to conclude that it was the intention of the parties to substitute the liability of two of the partners, either as makers or indorsers, for $8,000 and the liability of one for only $2,000, accompanied by the surrender of all collateral, in lieu of the liability, for the full amount, of all the partners of the bank, extending to both individual and partnership assets, and substantially secured by collateral. The sole purpose of the transaction was to enhance the value of the loan. The result accomplished, if plaintiff's theory is accepted, was to very substantially diminish its value. The apparent inconsistency in surrendering the notes of the Bank of Hubbardston (which notes contained the agreement relating to collateral) is at least balanced by the inconsistency of failure to demand and receive the collateral if it were no longer to be held as a pledge for payment of the debt. Compliance with the demand made in August, 1932, for deposit of "other collateral" is also convincing that at that time no one questioned the right of the national bank to retain all the security it then had and to require more to render the loan a satisfactory one. The record discloses acts of each party apparently inconsistent with its present theory. The identity of the owners of the Bank of Hubbardston and of the individuals who gave the notes in February, 1932, is such as to require substantial evidence to bring the conviction that the original indebtedness was intended to be extinguished.

In analogous situations the courts have recognized that clear evidence of agreement or consent to accept the new obligation in extinguishment of the old is essential. In 21 R.C.L. 76, it is said:

"The taking of a note of one joint debtor is generally held not to be a payment of the joint debt, unless there is an agreement to that effect, the presumption being, it seems, that it was intended as collateral security only. * * *

"A promissory note made by one partner alone for a debt of the firm does not operate as payment, and does not release another partner from the debt, unless the creditor agrees to accept it as payment and release the other partner. No discharge or satisfaction or release is to be implied from the mere acceptance of such a note, or balancing the firm account therewith."

See 48 C.J. 616, where it is said: "* * * The execution and delivery by a partner of his individual draft or promissory note, or his acceptance of a draft upon him individually, for a debt of the partnership does not extinguish the firm indebtedness, although done after the dissolution of the partnership, except where the creditor agrees or consents to receive it in payment. * * *"

The bill of complaint should be dismissed and a decree will be entered accordingly.

Upon the hearing of this case it appeared that on April 12, 1934, an order was entered by the circuit court of Ionia county accepting the resignation of George E. Fritz as receiver of the Bank of Hubbardston, and appointing Clair R. Carr as permanent receiver. The decree when submitted may provide for substitution of the new receiver as plaintiff and for amendment of all pleadings to accord with the present state of facts, the amendment to be effective as of April 12, 1934.

This opinion is adopted by the court as its findings of fact and conclusions of law, and is hereby made a part of the record.